UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD L. MULLIGAN JR., Individually and on Behalf of All Others Similarly Situated, <br><br>                Plaintiff, <br><br> v. <br><br> ACETO CORPORATION, SALVATORE GUCCIONE and DOUGLAS ROTH, <br><br>                Defendants. | Case No. _____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Ronald L. Mulligan Jr. ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Aceto Corporation ("Aceto" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired Aceto common stock from August 25, 2017 through April 18, 2018, both dates inclusive ("Class

Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Aceto is an international company engaged in the development, marketing, sales and distribution of finished dosage form generic pharmaceuticals, nutraceutical products, pharmaceutical active ingredients and intermediates, specialty performance chemicals inclusive of agricultural intermediates and agricultural protection products.

3.      During the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company failed to implement and enforce proper internal control to identify the misapplication of cash; (ii) the Company would incur large non-cash intangible asset impairment charges, (iii) the Company lacked effective internal control over financial reporting; (iv) the Company's financial results for the fiscal year 2017 could not be relied upon; (v) the Company's fiscal 2018 financial guidance was overstated; and, (vi) as a result of the foregoing, Aceto's public statements were materially false and misleading at all relevant times.

4.      On November 3, 2017, Aceto filed a Form 8-K with the SEC disclosing the non-reliance on its previously issued financial statements and a material weakness in internal control over financial reporting.

5.      On April 18, 2018, Aceto issued a press release announcing an update on the Company's business and financial condition. Therein, the Company disclosed the non-reliance on the previously issued 2018 fiscal year earnings guidance and the recording non-cash intangible asset impairment charges, including goodwill, in the range of $230 million to $260 million.

6.      On this news, Aceto's common stock declined $4.74 from a close price of $7.40 on April 18, 2018, to a close price of $2.66 on April 19, 2018, *a drop of approximately 64.05% in the course of a trading day*.

7.      As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common stock, Plaintiff, and other Class members have suffered significant losses and damages.

<u>**JURISDICTION AND VENUE**</u>

8.      The federal law claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 27 of the Securities Act (15 U.S.C. §78aa.). This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b) because certain of the acts alleged herein, including the preparation and dissemination of materially false and/or misleading information, occurred in this District.

<u>**PARTIES**</u>

11.      Plaintiff purchased Aceto's common stock within the Class Period and, as a result, was damaged thereby. Plaintiff's certification evidencing his transactions is attached hereto as Exhibit A.

12.     Defendant Aceto is a New York corporation with principal offices located at 4 Tri Harbor Court, Port Washington, NY 11050. The Company common stock trades on the NasdaqGS under the ticker symbol "ACET."

13.     Defendant Salvatore Guccione ("Guccione") has served at all relevant times as the Company's President and Chief Executive Officer ("CEO").

14.     Defendant Douglas Roth ("Roth") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

15.     Defendants in paragraphs 13-14 are collectively referred to herein as the "Individual Defendants."

16.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(d)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(e)     was aware of or deliberately recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(f)     approved or ratified these statements in violation of the federal securities laws.

17.     The Individual Defendants, because of their positions within the Company, had access to undisclosed information about Aceto's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations and performance), conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.

18.     As officers of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the federal securities laws of the United States, the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Aceto's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants

knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

20.     Each of the Individual Defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Aceto's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Aceto's business, operations, management and the intrinsic value of its common stock and (ii) caused Plaintiff and other shareholders to purchase Aceto's common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### A.     Background

21.     Incorporated in 1947 in the State of New York, Aceto is an international company engaged in the development, marketing, sales and distribution of finished dosage form generic pharmaceuticals, nutraceutical products, pharmaceutical active ingredients and intermediates, specialty performance chemicals inclusive of agricultural intermediates and agricultural protection products.

### B.     Material Misstatements and Omissions during the Class Period

22.     The Class Period begins on August 25, 2017, when Aceto filed a Form 10-K with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended June 30, 2017 ("2017 10-K"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. Therein, Aceto stated in pertinent part:

6

**Management's Report on Internal Control over Financial Reporting**

Our management is responsible for establishing and maintaining adequate internal control over financial reporting, as that term is defined in Rule 13a-15(f) under the Exchange Act. Under the supervision and with the participation of our management, including our principal executive and principal financial officers, we assessed, as of June 30, 2017, the effectiveness of our internal control over financial reporting. This assessment was based on criteria established in the framework in Internal Control-Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. ***Based on our assessment using those criteria, management concluded that our internal control over financial reporting as of June 30, 2017, was effective.***

As discussed in Note 3 — Business Combinations, to our Consolidated Financial Statements, on December 21, 2016, wholly owned subsidiaries of Rising Pharmaceuticals, Inc. ("Rising"), a wholly owned subsidiary of Aceto, completed the acquisition of certain generic products and related assets of entities formerly known as Citron Pharma LLC and its affiliate Lucid Pharma LLC. Rising formed two subsidiaries to consummate the product acquisition – Rising Health, LLC (which acquired certain products and related assets of Citron) and Acetris Health, LLC (which acquired certain products and related assets of Lucid). The scope of our evaluation did not include specific processes or transactions unique to Rising Health and Acetris Health since Rising Health and Acetris Health have not been integrated into our internal control systems as of June 30, 2017. We are continuing the integration of Rising Health and Acetris Health into our internal control systems and will include their specific processes and transactions in our fiscal year 2018 evaluation of the effectiveness of internal control over financial reporting. Rising Health and Acetris Health's assets, which were excluded from our internal control evaluation, accounted for 14% of our total assets at June 30, 2017. Rising Health and Acetris Health accounted for 19% of our total net sales for the year ended June 30, 2017.

Our internal control over financial reporting as of June 30, 2017, has been audited by BDO USA, LLP, an independent registered public accounting firm, as stated in its report, which is included herein.

Internal control over financial reporting is defined as a process designed by, or under the supervision of, our principal executive and principal financial officers and effected by our board of directors, management and other personnel to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for

external purposes in accordance with generally accepted accounting principles, and includes those policies and procedures that:

- pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of our assets;

- provide reasonable assurance that transactions are recorded as necessary to permit the preparation of financial statements in accordance with U.S. generally accepted accounting principles and that our receipts and expenditures are being made only in accordance with authorization of our management and directors; and

- provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of our assets that could have a material effect on the financial statements.

Emphasis added.

23.     In the 2017 10-K, Aceto disclosed the following consolidated balance sheets:

**ACETO CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED BALANCE SHEETS**
**AS OF JUNE 30, 2017 AND 2016**
(in thousands, except per-share amounts)

|  | 2017 | 2016 |
|---|---|---|
| ASSETS | | |
| Current assets: | | |
| Cash and cash equivalents | $ 55,680 | $ 66,828 |
| Investments | 2,046 | 881 |
| Trade receivables: less allowance for doubtful accounts (2017, $485; 2016, $513) | 264,896 | 167,612 |
| Other receivables | 10,664 | 12,650 |
| Inventory | 136,387 | 98,107 |
| Prepaid expenses and other current assets | 3,941 | 3,339 |
| Deferred income tax asset, net | 546 | 3,244 |
| Total current assets | 474,160 | 352,661 |
| | | |
| Property and equipment, net | 10,428 | 10,044 |
| Property held for sale | 7,152 | 6,868 |
| Goodwill | 236,970 | 67,871 |
| Intangible assets, net | 285,081 | 79,071 |
| Deferred income tax asset, net | 19,453 | 18,053 |
| Other assets | 7,546 | 6,210 |
| | | |
| TOTAL ASSETS | $ 1,040,790 | $ 540,778 |

8

LIABILITIES AND SHAREHOLDERS' EQUITY

Current liabilities:

| | | |
|---|---|---|
| Current portion of long-term debt | $ 14,466 | $ 197 |
| Accounts payable | 90,011 | 46,034 |
| Accrued expenses | 118,328 | 52,675 |
| Total current liabilities | 222,805 | 98,906 |
| | | |
| Long-term debt | 339,200 | 118,592 |
| Long-term liabilities | 61,449 | 6,344 |
| Environmental remediation liability | 2,339 | 3,352 |
| Deferred income tax liability | 7,325 | 9,142 |
| Total liabilities | 633,118 | 236,336 |

Commitments and contingencies (Note 16)

Shareholders' equity:

| | | |
|---|---|---|
| Preferred stock, 2,000 shares authorized; no shares issued and outstanding | - | - |
| Common stock, $.01 par value, 75,000 shares authorized at June 30, 2017 and June 30, 2016; 30,094 and 29,595 shares issued and outstanding at June 30, 2017 and 2016, respectively | 301 | 296 |
| Capital in excess of par value | 214,198 | 115,667 |
| Retained earnings | 198,285 | 194,804 |
| Accumulated other comprehensive loss | (5,112) | (6,325) |
| Total shareholders' equity | 407,672 | 304,442 |
| | | |
| TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY | $ 1,040,790 | $ 540,778 |

24.    The statements in paragraph ¶¶22-23 above were materially false and/or misleading because they misrepresented and failed to disclose adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company failed to implement and enforce proper internal control to identify the misapplication of cash; (ii) the Company lacked effective internal control over financial reporting; (iii) the Company's financial results could not be relied upon; and, (iv) as a result of the foregoing, Aceto's public statements were materially false and misleading at all relevant times.

C.    **The Truth Begins to Emerge**

25.    On November 3, 2017, Aceto filed a Form 8-K with the SEC disclosing the non-reliance on its previously issued financial statements and a material weakness in internal control over financial reporting ("November 2017 8-K"), stating in relevant part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statement or a Related Audited Report or Completed Interim Review.**

The Registrant has identified and recorded an adjustment related to the misapplication of cash in the year ended June 30, 2015. The correction resulted in a $4.0 million decrease to trade receivables as of June 30, 2015, a $1.4 million increase to other receivables as of June 30, 2015 and a $4.0 million reduction in net sales for the year ended June 30, 2015. The Registrant has performed a qualitative and quantitative analysis of this misapplication and has determined that it is not material to fiscal year 2015. The Registrant expects to file an amendment (the "10-K Amendment") to its Annual Report on Form 10-K for the fiscal year ended June 30, 2017 (the "2017 10-K") to reflect this matter.

A "material weakness" is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. ***After discussion with the Registrant's Audit Committee and BDO USA, LLP, the Registrant's independent registered accounting firm ("BDO"), the Registrant has determined that the above-mentioned adjustment demonstrated that there was a material weakness in the design and effectiveness of the Registrant's internal control over financial reporting in that the Registrant's system of internal control did not generate a report that could be used by management to assure that the aging of trade receivables was accurate***. The Registrant believes that it has remediated the underlying causes of this material weakness, as will be more fully described in its Quarterly Report on Form 10-Q for the quarter ended September 30, 2017. The Company will continue to monitor and test the remediation to ensure its effectiveness.

***After further discussion with the Registrant's Audit Committee and BDO on November 1, 2017 and November 2, 2017, the Registrant has also determined that because of the existence of the above-mentioned material weakness as of June 30, 2017, the Management's Report on Internal Control over Financial Reporting (the "Management's Report") and the related Report of Independent Registered Accounting Firm on internal control over financial reporting (the "BDO Internal Control Report") included in the 2017 10-K should no longer be relied upon. In the 10-K Amendment, the Management's Report and the BDO Internal Control Report will be amended to refer to the above-mentioned material weakness.***

Emphasis added.

26.     On November 9, 2017, Aceta filed an amendment to the 2017 10-K on a Form 10-K/A with the SEC ("2017 Amended 10-K"). Therein the Company stated in relevant part:

**Explanatory Note**
(all dollar amounts in this Explanatory Note are expressed in thousands)

As previously reported in a Form 8-K filed on November 3, 2017, Aceto Corporation (the "Company," "we," "us," or "our") has identified and recorded an adjustment related to the misapplication of cash in the fiscal year ended June 30, 2015. The correction resulted in a $4,007 decrease to trade receivables as of June 30, 2015, 2016 and 2017, a $1,402 increase to other receivables as of June 30, 2015, 2016 and 2017, a $4,007 reduction in net sales for the year ended June 30, 2015 and a $2,605 reduction in net income for the year ended June 30, 2015. We have performed a qualitative and quantitative analysis of this misapplication and have determined that it is not material to fiscal year 2015.

A "material weakness" is a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. Also as previously reported, after discussion with the Company's Audit Committee and BDO USA, LLP ("BDO"), the Company's independent registered accounting firm, the Company determined that the above-mentioned adjustment demonstrated that there was a material weakness in the design and effectiveness of our internal control over financial reporting, in that our system of internal control did not generate a report that could be used by management to assure that precision in the review of the aging of trade receivables was adequate. As a result of this material weakness, a reasonable possibility existed that a material misstatement in trade receivables in our annual or interim financial statements could occur and not be prevented or detected on a timely basis.

We are filing this Amendment No. 1 on Form 10-K/A (this "Amendment") to our annual report on Form 10-K for the fiscal year ended June 30, 2017, which was originally filed on August 25, 2017 (the "Original Filing"), in order to:

- amend Item 1A, "Risk Factors", to modify our risk related to internal controls to refer to the above-mentioned material weakness;

- amend Item 8, "Financial Statements and Supplementary Data" for the change in the Report of Independent Registered Public

11

Accounting Firm, in relation to the independent registered public accounting firm's report on our internal control over financial reporting;

- make revisions for immaterial errors in the consolidated financial statements previously issued in the Original Filing relating to the corrections noted in the first paragraph of this Explanatory Note, in Item 1, "Business", Item 6, "Selected Financial Data", Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" and Item 8, "Financial Statements and Supplementary Data"; and

- amend Item 9A, "Controls and Procedures" with respect to (i) our conclusions regarding the effectiveness of our disclosure controls and procedures and our internal control over financial reporting and (ii) BDO's related attestation report due to the material weakness described above identified subsequent to the issuance of our Original Filing.

As required by Rule 12b-15 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), new certifications of our principal executive officer and principal financial officer are also being filed as exhibits to this Amendment. Similarly, revised XBRL exhibits are being filed as exhibits to this Amendment. As a result, Item 15, "Exhibits, Financial Statement Schedules", has also been modified.

**D.**     **Additional Misstatements**

27.     In the 2017 Amended 10-K, Aceto disclosed the following consolidated balance sheets for the fiscal years 2015, 2016 and 2017:

**ACETO CORPORATION AND SUBSIDIARIES**
**CONSOLIDATED BALANCE SHEETS**
**AS OF JUNE 30, 2017 AND 2016**
(in thousands, except per-share amounts)

|  | 2017 | 2016 |
|---|---|---|
| ASSETS |  |  |
| Current assets: |  |  |
| Cash and cash equivalents | $ 55,680 | $ 66,828 |
| Investments | 2,046 | 881 |
| Trade receivables: less allowance for doubtful accounts (2017, $485; 2016, $513) | 260,889 | 163,605 |
| Other receivables | 12,066 | 14,052 |
| Inventory | 136,387 | 98,107 |
| Prepaid expenses and other current assets | 3,941 | 3,339 |
| Deferred income tax asset, net | 546 | 3,244 |
| Total current assets | 471,555 | 350,056 |

| | | | | |
|---|---|---:|---|---:|
| Property and equipment, net | | 10,428 | | 10,044 |
| Property held for sale | | 7,152 | | 6,868 |
| Goodwill | | 236,970 | | 67,871 |
| Intangible assets, net | | 285,081 | | 79,071 |
| Deferred income tax asset, net | | 19,453 | | 18,053 |
| Other assets | | 7,546 | | 6,210 |
| | | | | |
| TOTAL ASSETS | $ | 1,038,185 | $ | 538,173 |
| | | | | |
| LIABILITIES AND SHAREHOLDERS' EQUITY | | | | |
| Current liabilities: | | | | |
| Current portion of long-term debt | $ | 14,466 | $ | 197 |
| Accounts payable | | 90,011 | | 46,034 |
| Accrued expenses | | 118,328 | | 52,675 |
| Total current liabilities | | 222,805 | | 98,906 |
| | | | | |
| Long-term debt | | 339,200 | | 118,592 |
| Long-term liabilities | | 61,449 | | 6,344 |
| Environmental remediation liability | | 2,339 | | 3,352 |
| Deferred income tax liability | | 7,325 | | 9,142 |
| Total liabilities | | 633,118 | | 236,336 |
| | | | | |
| Commitments and contingencies (Note 16) | | | | |
| | | | | |
| Shareholders' equity: | | | | |
| Preferred stock, 2,000 shares authorized; no shares issued and outstanding | | - | | - |
| Common stock, $.01 par value, 75,000 shares authorized at June 30, 2017 and June 30, 2016; 30,094 and 29,595 shares issued and outstanding at June 30, 2017 and 2016, respectively | | 301 | | 296 |
| Capital in excess of par value | | 214,198 | | 115,667 |
| Retained earnings | | 195,680 | | 192,199 |
| Accumulated other comprehensive loss | | (5,112) | | (6,325) |
| Total shareholders' equity | | 405,067 | | 301,837 |
| | | | | |
| TOTAL LIABILITIES AND SHAREHOLDERS' EQUITY | $ | 1,038,185 | $ | 538,173 |

28.     On February 1, 2018, Aceto issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC, announcing the Company's financial and operating results for the second fiscal quarter and six months ended December 31, 2017 ("Q2 2017 Press Release"). For the quarter, the Company reported a net loss of $13.9 million, compared to a net loss of $0.6 million in the previous year's comparable quarter. The press release stated in relevant part:

> PORT WASHINGTON, N.Y., February 1, 2018 — ACETO Corporation (NASDAQ: ACET), an international company engaged in the development, marketing, sale and distribution of Human Health products, Pharmaceutical Ingredients and Performance Chemicals, announced today financial results for the second quarter of fiscal 2018 ended December 31, 2017.

**Second Quarter Fiscal 2018 versus Second Quarter Fiscal 2017**

- Net sales of $171.2 million versus $125.6 million, a 36.4% increase
- Gross profit of $34.0 million versus $30.8 million, a 10.3% increase
- Net loss of $13.9 million versus net loss of $0.6 million
- Net loss includes $13.9 million of additional income tax expense associated with the Tax Cuts and Jobs Act ("TCJA")
- Diluted EPS loss of $0.39 versus loss of $0.02
- Non-GAAP Adjusted Net Income of $7.6 million versus $7.3 million, a 4.7% increase
- Non-GAAP Adjusted EPS of $0.22 versus $0.24, an 8.3% decrease

\*        \*        \*

**Fiscal 2018 Guidance**

For the fiscal year ending June 30, 2018, at current exchange rates, ACETO is providing financial guidance as follows:

- Total revenues to increase approximately 10% to 15%;
- Reported diluted GAAP loss per share between $(0.22) and $(0.32);
- Diluted Non-GAAP earnings per share between $1.00 and $1.05.

The Company's fiscal 2018 financial guidance is based in part on the following assumptions:

- Generic industry headwinds continued in our second fiscal quarter and we are expecting annual price erosion in the low double digits percentage;
- Reported diluted GAAP loss per share includes an additional tax expense of $0.39 related to the TCJA
- R&D expense of approximately $9.0 million; and,
- Total generic product launches of 15 to 20.

29.    The statements in paragraph ¶27-28 above were materially false and/or misleading because they misrepresented and failed to disclose adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded

14

by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company would incur large non-cash intangible asset impairment charges; (ii) the Company lacked effective internal control over financial reporting; (iii) the Company's fiscal 2018 financial guidance was overstated; and, (iv) as a result of the foregoing, Aceto's public statements were materially false and misleading at all relevant times.

### E.   The Truth Continues to Emerge

30.   On April 18, 2018, after the market close, Aceto issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC, announcing an update on the Company's business and financial condition ("April 2018 Press Release"). Therein, the Company stated in relevant part:

**ACETO Board Takes Proactive Steps to Address Business and Financial Challenges**

**Negotiation of Waiver with Lenders; Reduction of Dividend**

**Announced Nonreliance on Prior Full-Year Earnings Guidance**

**Appoints Rebecca Roof as Interim CFO**

**Names Alan Levin Non-Executive Vice Chairman**

**Initiates Evaluation of Strategic Alternatives**

PORT WASHINGTON, N.Y., April 18, 2018 -- *ACETO Corporation (Nasdaq: ACET), an international company engaged in the development, marketing, sale and distribution of Human Health products, Pharmaceutical Ingredients and Performance Chemicals, announced, in light of the persistent adverse conditions in the generics market, it is negotiating with its bank lenders a waiver of its credit agreement with respect to its total net leverage and debt service coverage financial covenants in the fiscal third quarter, and that the financial guidance issued on February 1, 2018, should no longer be relied upon. In addition, the Company anticipates recording non-cash intangible asset impairment charges, including goodwill, in the range of $230 million to $260 million on certain currently marketed and pipeline*

*generic products as a result of continued intense competitive and pricing pressures.*

Al Eilender, Chairman, said, "Given continued headwinds in the generics market, the Board has taken decisive action by bolstering the Company's senior leadership, engaging in proactive discussions with its secured lenders, and initiating a thorough evaluation of strategic alternatives. The Board looks forward to working with and supporting management throughout this process and appreciates the continued dedication of its employees and other stakeholders while it navigates this difficult industry environment."

ACETO's Board of Directors has taken several immediate and proactive steps to address these developments:

- The Company is having productive discussions with its secured lenders regarding implementation of a covenant waiver for the third fiscal quarter of 2018.

- To provide appropriate assurances to its lenders, to fortify the balance sheet and to preserve the Company's liquidity position, the Board anticipates a significant reduction of the Company's dividend going forward.

- The Board announced the appointment of Rebecca Roof as Interim CFO and the resignation of CFO Edward Borkowski, who has decided to pursue another opportunity. Ms. Roof is a highly experienced finance professional and a Managing Director at AlixPartners LLP. While at AlixPartners, Ms. Roof has served as Interim Chief Financial Officer of the Eastman Kodak Company, Atkins Nutritionals, Anchor Glass Corporation, Fleming Foods, and several privately held entities. Her pharmaceutical and specialty chemicals experience includes leadership roles at Taro Pharmaceuticals and LyondellBasell, also while at AlixPartners.

- The Board has named Director Alan Levin as Non-Executive Vice Chairman of the Board effective today. Alan Levin first joined the ACETO Board in December 2015 and became Lead Independent Director in July 2016. Prior to joining the ACETO Board, Mr. Levin held various financial positions of increasing responsibility with Pfizer, Inc. including Chief Financial Officer (2005-2007), and was Chief Financial Officer at Endo Health Solutions from 2009-2013.

- The Board is directing that the Company suspend providing further financial guidance for at least the balance of the fiscal year.

- The Board has initiated a process to identify and evaluate a range of strategic alternatives. Strategic alternatives to be considered may include the sale of a key business segment(s), a merger or other business combination with another party, continuing as a standalone entity or other potential alternatives.

- The Company has retained PJT Partners as its financial advisor and Lowenstein Sandler LLP as its legal counsel to assist in this strategic review process.

ACETO cautions that there can be no assurance that the strategic review process will result in any transaction. The Company has not set a timetable for completion of the review of strategic alternatives, and it does not intend to make any further announcements related to its review unless and until the Board has approved a transaction or otherwise has determined that further disclosure is appropriate or required by law.

The Company is in the process of finalizing the actual amount of the impairment charges. The Company expects that the analysis supporting the impairment will be completed in time to allow for its recording in the third quarter of FY18.

Emphasis added.

31.     On this news, Aceto's common stock declined $4.74 from a close price of $7.40 on April 18, 2018, to a close price of $2.66 on April 19, 2018, *a drop of approximately 64.05% in the course of a trading day*.

32.     As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common stock, Plaintiff, and other Class members have suffered significant losses and damages.

## ADDITIONAL SCIENTER ALLEGATIONS

33.     As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or

17

dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Aceto, their control over, and/or receipt and/or modification of Aceto's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Aceto, participated in the fraudulent scheme alleged herein.

**LOSS CAUSATION AND ECONOMIC LOSS**

34. During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the Company's stock price, and operated as a fraud or deceit on acquirers of the Company's common stock. As detailed above, when the truth about Aceto's misconduct was revealed, the value of the Company's common stock declined precipitously as the prior artificial inflation no longer propped up its stock price. The decline in Aceto's share price was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the common stock price decline negates any inference that the loss suffered by Plaintiff and other members of the Class was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the Defendants' fraudulent conduct. The economic loss, i.e., damages, suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the Company's stock price and the subsequent significant decline in the value of the Company's share, price when Defendants' prior misrepresentations and other fraudulent conduct was revealed.

35. At all relevant times, Defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by the Plaintiff and

other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of Aceto's business, operations and financial condition, as alleged herein. Throughout the Class Period, Defendants publicly issued materially false and misleading statements and omitted material facts necessary to make Defendants' statements not false or misleading, causing Aceto's common stock to be artificially inflated. Plaintiff and other Class members purchased Aceto's common stock at those artificially inflated prices, causing them to suffer the damages complained of herein.

## PRESUMPTION OF RELIANCE; FRAUD-ON-THE-MARKET

36.    At all relevant times, the market for Aceto common stock was an efficient market for the following reasons, among others:

(a) Aceto's common stock met the requirements for listing, and was listed and actively traded on the NasdaqGS, a highly efficient market;

(b) During the Class Period, Aceto's common stock was actively traded, demonstrating a strong presumption of an efficient market;

(c) As a regulated issuer, Aceto filed with the SEC periodic public reports during the Class Period;

(d) Aceto regularly communicated with public investors via established market communication mechanisms;

(e) Aceto was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(f) Unexpected material news about Aceto was rapidly reflected in and

incorporated into the Company's stock price during the Class Period.

37.     As a result of the foregoing, the market for Aceto common stock promptly digested current information regarding Aceto from all publicly available sources and reflected such information in Aceto's share price. Under these circumstances, all purchasers of Aceto common stock during the Class Period suffered similar injury through their purchase of Aceto's common stock at artificially inflated prices, and a presumption of reliance applies.

38.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security. Here, the facts withheld are material because an investor would have considered the Company's financials and adequacy of internal controls over financial reporting when deciding whether to purchase and/or sell stock in Aceto.

## NO SAFE HARBOR; INAPPLICABILITY OF BESPEAKS CAUTION DOCTRINE

39.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint.

40.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward-looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

41.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved by an executive officer of Aceto who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by the defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

**CLASS ACTION ALLEGATIONS**

42.     Plaintiff brings this action on behalf of all individuals and entities who purchased or otherwise acquired Aceto common stock on the public market during the Class Period, and were damaged, excluding the Company, the defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the defendants have or had a controlling interest (the "Class").

43.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Aceto common stock was actively traded on the NasdaqGS. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Aceto or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in

21

securities class actions. Upon information and belief, these shares are held by thousands if not millions of individuals located geographically throughout the country and possibly the world. Joinder would be highly impracticable.

44.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by the defendants' respective wrongful conduct in violation of the federal laws complained of herein.

45.    Plaintiff has and will continue to fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by the defendants' respective acts as alleged herein;

(b)    whether the defendants acted knowingly or with deliberate recklessness in issuing false and misleading financial statements;

(c)    whether the price of Aceto's common stock during the Class Period was artificially inflated because of the defendants' conduct complained of herein; and

(d)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I
### *Violation of Section 10(b) and Rule 10b-5 Against All Defendants*

48.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Aceto's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, each of the Defendants took the actions set forth herein.

50.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Aceto common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

51.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Aceto as specified herein.

52.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Aceto's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Aceto and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Aceto common stock during the Class Period.

53.     Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each Individual Defendant, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each Individual Defendant enjoyed significant personal contact and familiarity with the other Individual Defendant and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each Individual Defendant was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

54.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to

ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Aceto's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

55.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Aceto's common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of Aceto's publicly-traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Aceto's common stock during the Class Period at artificially high prices and were or will be damaged thereby.

56.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Aceto's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Aceto's common stock, or, if they had acquired such

securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

59.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of common stock giving rise to the cause of action.

<u>**COUNT II**</u>
<u>***The Individual Defendants Violated Section 20(a) of the Exchange Act***</u>

60.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

61.     The Individual Defendants acted as controlling persons of Aceto within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these

statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

62.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Aceto and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

64.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

65.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of common stock giving rise to the cause of action.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff prays for relief and judgment as follows:

(a)     Determining that this action is a proper class action, certifying Plaintiff as class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as class counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of the defendants' wrongdoing, in an amount

to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

(d)     Granting extraordinary equitable and/or injunctive relief as permitted by law; and

(e)     Such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a jury trial.

Dated: April 24, 2018.

/s/ Eduard Korsinsky
**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email:ek@zlk.com

*Attorneys for Plaintiff Ronald L. Mulligan Jr.*
